MITCHELL PLANING MILL COMPANY, Appellant, v. WILLIAM ALLISON *et al.*, Respondents.

**Kansas City Court of Appeals, May 6, 1895.**[*]

1. **Mechanics' Liens:** LIEN PAPER: ITEMIZATION: DATES. As an account is a detailed statement of mutual demands, a lien paper to be a just and true account should contain all the various items and dates that go to make it up, for this is the accustomed meaning of the word.

2. ———: ———: DATES: PRIORITY. The law demands the dates of the items, as they are necessary in determining priorities of contesting lienors.

3. ———: ———: BETWEEN GIVEN DATES: AFFIDAVIT. The fact that a lien paper has attached to it that the items were delivered and issued between April 20, 1893, and July 19, 1893, will not save the account upon the objection there are no dates for the items and the material furnished; nor will the averment in the affidavit that the demand accrued within four months prior to the filing of the lien, cure such defect.

4. ———: ———: LUMPING PRICE. A lien account, where the whole matter of prices is disposed of by lumping charge, is insufficient, unless it further appears they were purchased for a stated sum.

---

[*]This case reached the reporter June 19, 1897, without briefs, as all the papers had been transferred to the supreme court.

5. **Appellate Practice**: MOTION FOR NEW TRIAL: TAXING COST. Where the trial court, on the motion of an administrator defendant, taxes the cost against the appellant, who failed to complain thereof in his motion for new trial, the appellate court can not review such action of the trial court.

*Appeal from the Clay Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED AND TRANSFERRED TO THE SUPREME COURT.

### STATEMENT.

The following is the lien paper, which was excluded by the trial court:

"R. E. Brown, for Allison's building at Richmond, Mo., bought of Mitchell Planing Mill Company:

3 cellar sash 12x24 and screens for same, 2 lights,
2 cellar sash 12x24 and screens for same, 3 lights,
3 cellar sash 12x16 and screens for same, 2 lights,
1 window sash 28x40 and screens for same, 2 lights,
1 window sash 24x30 and screens for same, 2 lights,
2 window sash 28x40 and screens for same, 2 lights,
1 window sash 28x40 and screens for same, 2 lights,
6 window sash 24x40 and screens for same, 2 lights,
2 window sash 16x24 and screens for same, 2 lights,
4 window sash 26x36 and screens for same, 2 lights,
12 window sash 24x36 and screens for same, 2 lights,
2 window sash 28x30 and screens for same, 2 lights,
1 window sash 36x30 and screens for same, 2 lights,
2 window sash 24x24 and screens for same, 2 lights,
2 window sash 16x20 and screens for same, 2 lights,
1 window sash 14x16 and screens for same, 2 lights,
2 window sash 12x12 and screens for same, 2 lights,
1 window sash 14x16 and screens for same, 2 lights,
1 front window with transom leaded glass,
3 doors 3x6-6, white pine,
4 doors 2-6x6-6, white pine,
1 pair sliding doors 6x8, veneered oak,
3 doors 2-6x7-1, side,
8 doors 2-6x7, white pine, 5 panel,
1 door 2-6x7, white pine, 5 panel,
1 door 2-7x7, white pine, 5 panel, 1 3-4,
1 door 2-6x7, white pine, 5 panel,
6 doors 2-9x6-6, white pine, 5 panel,

Planing Mill Co. v. Allison.

3 doors 2–6x6–6, white pine, 5 panel,
1 screen door 3x7, 1 1-8 wired,
1 screen door 2–8x7, 1 1-8 wired,
1 screen door 2–8x7, 1 1-8 wired,
1 screen door 2–8x6–6, wired,
1 front veneered oak, 2 sides, chipped glass,
1 front veneered oak, 2 sides 2–8x7, white pine,
6 columns 7x7 9,
1 column 6x6 4,
10 casings, 2x4 rail,
80 balusters, 12,
60 balusters, 6,
65 feet red oak base,
25 feet red oak spool,
25 feet red oak apron,
185 feet red oak casing,
80 feet red oak picture moulding,
175 feet red oak window stop,
300 feet yellow pine picture moulding,
4 pieces oak 1x6, 9 feet,
2 pieces oak 1x6, 7 feet,
6 pieces oak 1x8, 8 feet,
1 piece oak 1x8, 10 feet,
1 flight main stairway,
300 feet yellow pine base... ..........................$286.50,
300 feet yellow pine moulding........................... 27.57,
360 feet yellow pine moulding,
600 feet of yellow pine casing,
6 pieces yellow pine base casing 7–2,
6 pieces yellow pine base casing 8–2,
2 pieces oak 7–2... .................................. 3.00,
1 door 2x6, white pine..... ......................... 3.00,
300 feet yellow pine window stop................. ... .... 1.80,
Extra on stair balusters.......... ............. ..... 25.00,
1 light ruby chipped glass........ ............. ........ 3.50,
                                                    ————
                                                    $350.37,
May 13th, by cash........ ... ...... ................$120.00,
                                                    ————
                                                    $230.37,

"Delivered and used in the building above described between April 20, 1893, and July 19, 1893.

"STATE OF MISSOURI, } ss.
"County of Jackson,

"G. J. Mitchell, as agent for Mitchell Planing Mill Company, of lawful age, being duly sworn on his oath says that said Mitchell Planing Mill Company is a corporation organized and doing business under the laws of Missouri and that the facts set forth in the pre-

ceding statement are true and said statement is hereby made a part of this affidavit; that the foregoing is a just and true account of the demand due said Mitchell Planing Mill Company, a corporation doing business under laws of Missouri, for work and labor done and materials furnished by them upon, to and for the buildings and improvements hereinbefore described, after all just credits have been given; that said work and labor were done and said materials furnished upon, to and for said buildings and improvements by it at the instance and request of and under one entire general contract with R. E. Brown; that the foregoing description is a true description of the property upon, to and for which said materials were furnished, and said work and labor done, and to which this lien is intended to apply, or so near as to identify the same; that said demand accrued within four months prior to the filing of this lien; and that on the eighth day of November, 1893, and at least ten days prior to the filing of this lien, they gave notice to W. M. Allison of their claim against the premises, buildings and improvements above described, the amount thereof, from whom due and of their intention to file a lien therefor; that said W. M. Allison was, as affiant is informed and believes, the owner of the above described premises and buildings and improvements thereon, at the time when said contract was made, and said materials were furnished, and that said W. M. Allison is, as affiant is informed and believes, the owner of the above described premises and the buildings and improvements thereon.''

Signed, ''G. J. MITCHELL.''

''Subscribed and sworn to before me this [L. S.] fifteenth day of November, 1893. My commission will expire September 12, 1896.

''JOHN H. BARNES,
''Notary public, Jackson county, Mo.''

"I, Thomas M. Deacy, clerk of the circuit court of Ray county, Mo., hereby certify that the within lien was filed in my office on the eighteenth day of November, 1893, at — o'clock, — M.

"Witness my hand and official seal at office in [L. S.] Richmond, the day and year above written.

"Thomas M. Deacy, Clerk.
"By D. C. Wall, D. C."

*Lavelock, Kirkpatrick & Divilbiss* for appellant.

*C. T. Garner & Son* and *D. C. Allen* for respondents.

No briefs.

Ellison, J.—This action was brought by a subcontractor to enforce a mechanic's lien against defendant's property for material furnished to Brown, who was the contractor with defendant to build his house. The lien paper, set out in the statement of this cause, was excluded by the trial court, and the correctness of this ruling is the principal question for determination. The point made against the lien paper is that it is not the "just and true account," required by section 6709, Revised Statutes 1889, its items not being dated, and that it does not therefore appear when they were furnished. The statute requires the claimant to file with the clerk of the circuit court "a just and true account of the demand due him," within the times limited "after the indebtedness shall have accrued."

What is a just and true account? It must necessarily consist of the items which make up the demand, with the prices for which they were sold and the dates when they were sold. "An account is defined to be a *detailed*. state-

Mechanic's liens: lien paper: itemization: dates.

ment of mutual demands in the matter of debit and credit between parties, arising out of contract, on some fiduciary relation." *McWilliams v. Allan*, 45 Mo. 574. "What the legislature evidently intended was that the lienor should exhibit his demand *fully*," etc. It is said in *Coe v. Ritter*, 86 Mo. 286: "Of course, it is expected that a 'just and true account' shall contain all the various *items* and *dates* that go to make it up, for this is the accustomed meaning of the words." (Italics ours.) The cases of *Rude v. Mitchell*, 97 Mo. 365, and *Grace v. Nesbit*, 109 Mo. 9, are in harmony with these quotations. In the former it is said that "there must be an account which answers to the ordinary signification of the term." It is so apparent that when one asks for a true account of a series of purchases which have been made in his behalf, or for which he is liable, that he should receive a bill of the items, with *dates*, that it is difficult to understand how it could be questioned. It is particularly so in a case where one's property is to be charged with the payment of a demand, for which he did not contract, and of which he may know nothing except what he may learn on investigation. A lien account for building material may extend over a great length of time. The owner is entitled to all reasonable *data* for the purposes of investigation. Any practitioner knows that in litigation on accounts, the dates of items frequently furnish the most satisfactory basis for the examination of witnesses and the ascertainment of the facts. They furnish the most ready mode of investigating.

But aside from the foregoing, the law itself further contemplates that the lien paper shall show the dates of the items, so that priorities, in litigation arising over conflicting interests, may be determined. By the provisions of sections 6707 and 6711, Revised Statutes 1889, priorities

——: ——: dates: priority.

Planing Mill Co. v. Allison.

between mechanic lienors and other incumbrancers are to be determined by the date (in case of material-men) of furnishing the material; that is, when it was begun to be furnished. And so it is held in *Reilly v. Hudson*, 62 Mo. 383, and *Douglas v. Zinc Co.*, 56 Mo. 399, that the date of furnishing the material will determine the question of priority over mortgages. And so we held it would determine the priority of a lienor over a vendee. *McAdow v. Sturtevant*, 41 Mo. App. 226. The case of *Coe v. Ritter*, 86 Mo. 277, involved a contest between a lienor and a mortgagee. The priority of the mortgage was ascertained from the date of the first item in the lien paper, which the court held could not be altered to the prejudice of the mortgagee by evidence that the lien had its inception at an earlier date. It is not meant by the foregoing to hold that the mere omission of a date to an item, or an erroneous date to an item would invalidate a lien paper, when it has not affected the rights of others; or that there may not be instances where, from the nature of the transaction, definite dates could not be given; but that there should be a substantial compliance with what we conceive to be a necessary requisite of the statute, as to dates, in ordinary cases, we entertain no doubt. We so held in *Curless v. Lewis*, 46 Mo. App. 278—a case wherein we interpreted Judge SHERWOOD's opinion in *Coe v. Ritter*, as we here interpret it.

But it is claimed that since the lien paper in controversy contained the statement that the material was "delivered and used in the building above described between April 20, 1893, and July 19, 1893;"

*between given dates: affidavit.* and since the affidavit attached thereto states that the "demand accrued within four months prior to the filing of this lien" the dates are sufficiently specified. We can not sustain this contention. The first statement just quoted could be true

VOL. 71 app—17

and yet be subject to all the objections we have pointed out; and besides, every item could have been furnished, delivered and used on April 21, or any other date between that and July 19. The second statement refers to no date and merely states the conclusion of the affiant, that the account accrued within four months. But, if it be conceded to be sufficient to show when the account accrued, it in no way aids the defects, in the account which we have been endeavoring to point out. At most it can only show that the *last* item of the account accrued *some time within the period of four months* next before the lien was filed. A statement of when the account in controversy here accrued, or was filed, can in no manner aid the defects it contains. The affidavit to a lien paper could show when an unitemized, or "lump" account, or balance of account, accrued, but such fact would not make of such an account the account meant by the statute.

Our decision here is in conflict with the case in the St. Louis court of appeals, of *Hayden v. Wulfing*, 19 Mo. App. 353, and we must therefore certify this cause to the supreme court.

2.    A further objection to this account is that, in the matter of prices, nearly the whole of the items are disposed of by a lumping charge. This is improper, unless it appears that they were purchased in that way by the contractor, for the sum stated. *Grace v. Nesbit, supra.*

3.    Brown, the contractor, died before the institution of this suit and Maria J. Brown, his administratrix, was made a defendant. Judgment was rendered against the estate for the amount of the claim. The administratrix filed a motion, which the court sustained, asking that the costs be taxed against plaintiff under section 210, Revised Statutes 1889, the suit having

been commenced in less than one year from the date
of the letters of administration. Plaintiff complains
here of the action of the court in sustaining said mo-
tion, but, as he made no reference to such action in
his motion for new trial, we can not notice the point.

The judgment, with the concurrence of the other
judges, is affirmed and the cause transferred to the
supreme court.